Tammy HOLT, Appellant

v.

James R. HOLT, Appellee

NO. 2014–CA–001535–ME

Court of Appeals of Kentucky.

RENDERED: MARCH 13, 2015; 10:00 A.M.

BRIEF FOR APPELLANT: Joseph Wantland, Shepherdsville, Kentucky

BRIEF FOR APPELLEE: Paul Blaine Hamilton, Bardstown, Kentucky

BEFORE: DIXON, JONES, AND THOMPSON, JUDGES.

*OPINION*

JONES, JUDGE:

This appeal arises from an order of the Bullitt Circuit Court, Family Division, granting Appellee James R. Holt ("James") a domestic violence order ("DVO") against Appellant Tammy Holt ("Tammy"). Tammy argues that the Bullitt Family Court lacked jurisdiction to enter the DVO because James was a resident of Nelson County. In the alternative, Tammy argues that there was insufficient evidence to support entry of the DVO against her and that the Bullitt Family Court did not conduct a "meaningful hearing" before entering the DVO. For the reasons more fully explained below, we AFFIRM.

## I. Background

The central facts of this case are not in dispute. Tammy and James were married to one another at one time. Their marital residence was located in Bullitt County, Kentucky. In August 2014, they were in the process of getting a divorce. Their dissolution action (including issues regarding the custody of their minor daughter) was pending before the Bullitt Family Court (Case No. 2013–CI–00978). After the parties separated, James relocated to Nelson County to live with his brother.

In late August 2014, James attempted to file petitions for domestic violence orders against Tammy on behalf of himself and his minor daughter with the Bullitt Circuit Clerk. The Bullitt Circuit Clerk instructed James that because he was a resident of Nelson County, he should file the petitions there.

Accordingly, on August 14, 2014, James filed a domestic violence petition in Nelson County. James alleged the following in his petition:

Respondent has engaged in acts of violence towards me as well as visible anger, swearing, and yelling in front of minor children (our daughter and her sons). In October of 2013 and EPO had to be taken out on Respondent after I (Petitioner) was awarded our residence in pending and initial divorce case. She had come to residence demanding to enter home, which I refused, at which time she struck me in the face and chest. While in dissolution, Respondent has repeatedly followed and performed "drivebys" at my current residence . . . and on at least two occasions came to [the] residence while I was not there, the second of which on 5/30/2014 pried back door open with child in possession and overturned entire room. Visible damage to back door. On July 21st as I dropped child off with Respondent I asked [child] to retrieve her U.K. jacket I had bought her as [child] tried to walk out door Respondent I asked was heard saying "oh no you don't" [and] pushing child into door.

The Nelson District Court entered emergency protection orders on both of James's petitions and scheduled the matters for a hearing on August 27, 2014. Prior the hearing, the Nelson District Court set aside the initial emergency orders it entered and transferred the action to the Bullitt Family Court. The Nelson District Court's August 20, 2014, order states:

A Petition was filed by Mr. Holt on August 14, 2014. This Court granted an Emergency Protection Order based upon the petition which ordered Respondent not to have any contact with the parties' child. The Court was not made aware of the active Domestic Violence Order entered by the Bullitt Family Court regarding these parties on August 4, 2014. IT IS HEREBY ORDERED that the Emergency Order entered in this matter is hereby set aside. This matter shall be transferred to the Bullitt Family Court case 13–D–00266 as this Court does not have the authority or jurisdiction to amend or contradict the Orders of the Bullitt Family Court. Furthermore, the Clerk is instructed to remove this matter from this Court's docket.

On September 2, 2014, the Bullitt Family Court held a hearing on James's petition for a DVO against Tammy.[1] An issue was raised at the hearing regarding the Bullitt Family Court's jurisdiction over the DVO given James's residency in Nelson County. Reluctantly, the Bullitt Family Court indicated that it would hear the matter. James and Tammy both testified at the hearing.

Consistent with his petition, James testified that Tammy had previously struck him in the face and chest. He also testified that Tammy was harassing, following, and spying on him. He testified that on May 30, 2014, someone broke into the home he shares with his brother by prying open a back door and ransacked his bedroom.[2] James testified that Tammy's past actions of violence and her stalking-like behavior made him afraid that she would harm him in the future.

Tammy admitted to being at James's home on the day his house was broken into, but denied entering the home. Tam-

---

1. James voluntarily dismissed the petition he filed on behalf of the minor child.

2. James introduced photographs showing the damaged door and his room.

my also denied that she ever struck or punched James.

Following the hearing, the Bullitt Family Court entered a DVO against Tammy. The DVO restrains Tammy from: (1) committing further acts of abuse or threats of abuse against James; (2) having any contact or communication with James; and (3) coming within 500 feet of James or his residence. The DVO also ordered Tammy to complete anger management counseling through any state certified provider and to submit proof of counseling.

This appeal followed.

## II. Analysis

Tammy's appeal involves two claims of error. Tammy first asserts that the DVO is void ab initio because the Bullitt Family Court lacked jurisdiction to issue a DVO where the petitioner, James, was not a resident of Bullitt County. In the alternative, Tammy argues that the Bullitt Family Court failed to conduct a "meaningful" hearing and no evidence supported entry of the DVO.

### A. Jurisdiction

Whether the Bullitt Family Court acted outside its jurisdiction in granting James a DVO is an issue of law. *Biggs v. Biggs,* 301 S.W.3d 32, 33 (Ky.App.2009). We review issues of law de novo. *Grange Mutual Insurance Co. v. Trude,* 151 S.W.3d 803, 810 (Ky.2004).

■ The concepts of venue and jurisdiction are commonly confused with one another. "[T]here are fundamental distinctions between the concepts of jurisdiction and venue, the former relating to the power of courts to adjudicate and the latter relating to the proper place for the claim to be heard." *Baze v. Commonwealth,* 276 S.W.3d 761, 766 (Ky.2008) (quoting *Stipp v. St. Charles,* 291 S.W.3d

720, 724 (Ky.App.2009)). "While the concept of venue is important, it does not reach the fundamental level of jurisdiction, a concept whereby the authority of the court to act is at issue." *Fritsch v. Caudill,* 146 S.W.3d 926, 927 (Ky.2004).

■ "[S]ubject-matter jurisdiction relates to a court's ability to hear a particular kind of case, not [a] particular case." *Davis v. Wingate,* 437 S.W.3d 720, 726 (Ky.2014). It is likewise important to recognize that a circuit court's power to act is not constrained by territorial limitations. *Winstead v. Commonwealth,* 327 S.W.3d 386, 410 (Ky.2010). "[T]here is one circuit court for the entire state, and all of its judges are members of the same court with equal power to act throughout the Commonwealth." *Id.*

The extent of a family court's jurisdiction is set forth in KRS 23A.100. In relevant part, this provision provides: "(2) In addition to general jurisdiction of Circuit Court, a family court division of Circuit Court shall have the following additional jurisdiction: ... (a) Domestic violence and abuse proceedings under KRS Chapter 403 subsequent to the issuance of an emergency protective order in accord with local protocols under KRS 403.735[.]" The following section, KRS 23A.100(3), further provides: "[f]amily court divisions of Circuit Court shall be the primary forum for cases in this section[.]"

■■ KRS 23A.100 makes it perfectly clear that "[f]amily courts are vested with jurisdiction to decide matters involving domestic violence." *Sitar v. Commonwealth,* 407 S.W.3d 538, 542 (Ky.2013). Moreover, KRS 23A.100(3) specifically dictates that family courts "shall be the primary forum for cases in this section, except that nothing in this section shall be construed to limit the concurrent jurisdiction of District Court." We are of the opinion

that such language is clear—while family court is the primary forum for matters concerning domestic violence and abuse, the district court has concurrent jurisdiction to enter protective orders under KRS 403.725. Use of the term "primary forum" clearly indicates that the General Assembly did not intend for the statute to affect a jurisdictional limitation, but rather to emphasize that the purposes underlying the creation of family courts as set out in KRS 23A.110 are best fulfilled when domestic cases proceed in family court.

*Gomez v. Gomez,* 254 S.W.3d 838, 841 (Ky. App.2008).

▮ The Bullitt Family Court issued a DVO in this case. Our General Assembly vested all family courts within this Commonwealth with the jurisdiction to preside over matters involving domestic violence. The Bullitt Family Court's order granting a DVO to James falls squarely within the category of cases this Commonwealth has entrusted to family courts. *See id.* The Bullitt Family Court had subject matter jurisdiction to issue a DVO.

▮ The question of whether Bullitt County was the correct county in which to hear the DVO proceedings is one of venue, not subject matter jurisdiction. "Venue generally derives from a statutory mandate as to the proper county or counties in which a claim may be heard." *Baze,* 276 S.W.3d at 766. In certain cases, venue may properly lie in more than one county. *Stipp v. St. Charles,* 291 S.W.3d 720, 725 (Ky.App.2009).

Venue in domestic violence actions is dictated by KRS 403.725. It provides:

(1) Any family member or member of an unmarried couple who is a resident of this state or has fled to this state to escape domestic violence and abuse may file a verified petition in the District Court of the county in which he resides. If the petitioner has left his usual place of residence within this state in order to avoid domestic violence and abuse, the petition may be filed and proceedings held in the District Court in the county of his usual residence or in the District Court in the county of current residence. Any family member or member of an unmarried couple who files a petition for an emergency protective order in District or Circuit Court shall make known to the court any custody or divorce actions, involving both the petitioner and the respondent, that are pending in any Circuit Court in the Commonwealth. The petition shall also include the name of the court where filed.

. . .

(4) *If a family member files an action for dissolution of marriage or child custody in Circuit Court, the Circuit Court shall have jurisdiction to issue a protective order upon the filing of a verified motion therein either at the commencement or during the pendency of the action in Circuit Court pursuant to the provisions of KRS 403.730 to 403.785.*

. . .

(7) During any hearing in Circuit Court on dissolution of marriage, child custody, or visitation, at which both parties are present or represented by counsel, the Circuit Judge shall have the authority to issue a protective order pursuant to KRS 403.750 to 403.785.

*Id.* (emphasis added).

▮ Having reviewed the statute, we conclude that KRS 403.725(1), (4) and (7) make clear that venue is appropriate both in the county where the victim resides (or has fled to) and any county circuit court where on-going dissolution proceedings involving the same parties are pending.

James, a resident of Nelson County, filed his petition for a DVO in Nelson County. This was proper under KRS 403.725(1). Since there was an on-going dissolution action pending before the Bullitt Family Court, however, venue was also appropriate in that court.[3] KRS 403.725(4).

After reviewing James's petition and having been made aware of the parties' pending dissolution proceedings in Bullitt County, the Nelson District Court determined that venue would be more appropriate in Bullitt County before the same family court judge that was already familiar with the parties and their interactions with one another. This was an appropriate and statutorily sound decision as venue was proper in both locations. *See Abbott v. Chesley*, 413 S.W.3d 589, 606 (Ky.2013). It was likewise proper for the Bullitt Family Court to accept transfer of the domestic violence action. *Id.* ("[E]ven if the trial judge at the receiving end of a venue transfer believes the venue change was incorrect, he or she is not required to transfer the case back to the court of origin or to a third forum.").

In conclusion, we find no error with respect to either jurisdiction or venue in this matter. The Bullitt Family Court is vested with jurisdiction over domestic violence proceedings. A dissolution action was pending in Bullitt County between James and Tammy. Accordingly, the Bullitt Family Court was an appropriate venue in which to hear James's petition for a DVO.

### B. Substantial Evidence to Support Entry of a DVO

Appellate review of a trial court's decision regarding issuance of a DVO "is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez*, 254 S.W.3d at 842. Findings of fact will not be set aside unless they are clearly erroneous, that is, unsupported by substantial evidence. Kentucky Rules of Civil Procedure (CR) 52.01; *Moore v. Asente*, 110 S.W.3d 336 (Ky. 2003).

The trial court may render a DVO if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may occur again. KRS 403.750(1). The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim "was more likely than not to have been a victim of domestic violence." *Gomez*, 254 S.W.3d at 842 (quoting *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky.1996)).

Domestic violence is defined as a "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse or assault between family members or members of an unmarried couple." KRS 403.720(1).

James testified that Tammy had hit him in the face and chest on prior occasions. Additionally, James testified that Tammy was harassing and stalking him and presented circumstantial evidence that Tammy unlawfully entered his home and ransacked his room. James also testified that Tammy's prior acts of violence, angry outbursts, frequent drive-bys, and harassing communications caused him to fear that she would commit future actions of violence against him.

Tammy emphatically denied that she ever physically assaulted James or that she broke into his home. She further disputed that the circumstantial evidence was sufficient enough for the trial court to rely on in concluding that she broke into James's home.

---

3. Pursuant to KRS 23A.100, a family court is considered part of the circuit court.

The trial court is in the best position to judge the credibility of the witnesses and weigh the evidence presented. *See Rupp v. Rupp,* 357 S.W.3d 207, 210 (Ky.App. 2011). Here, Tammy and James gave conflicting accounts of Tammy's conduct. As the fact-finder, the Bullitt Family Court relied on James's testimony.

Based on the record, we conclude the evidence presented was sufficient for the court to reasonably infer that Tammy had previously engaged in acts of domestic violence against James and that her conduct caused James to fear that she would engage in future acts of domestic violence against him, if not restrained. Accordingly, the Bullitt Family Court's issuance of the DVO order against Tammy was not in error.

We now briefly turn to Tammy's argument that the family court did not conduct a "meaningful hearing" as required by statute. KRS 403.750(1) permits a court to enter a DVO if, following the hearing, the court "finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur...." With respect to the hearing requirement, we have held that "[d]ue process requires, at the minimum, that each party be given a meaningful opportunity to be heard." *Wright v. Wright,* 181 S.W.3d 49, 53 (Ky. App.2005). In turn, a party has a meaningful opportunity to be heard where the trial court allows each party to present evidence and give sworn testimony before making a decision. *Id.*

Both James and Tammy were represented by counsel. Each gave sworn testimony under oath before the Bullitt Family Court. Moreover, each party was allowed an opportunity for cross-examination. We cannot find anywhere in the record where Tammy was denied an opportunity to present evidence before the Bullitt Family

Court rendered its decision. Accordingly, we conclude that Tammy was provided with a hearing as required by statute prior to entry of the DVO against her.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the Bullitt Circuit Court, Family Division.

DIXON, JUDGE, CONCURS.

THOMPSON, JUDGE, CONCURS IN MAJORITY OPINION AND WRITES SEPARATELY.

THOMPSON, JUDGE, · CONCURRING:

I have no disagreement with the law expressed and the result reached by the majority. I concur only to express my frustration with the actions of the deputy clerk who instructed James that he could not file a domestic violence petition in Bullitt County and emphasize a point of law which, accepted for decades, seems to be slowly eroding by common practice in our clerk's offices.

Ancient case law teaches "[t]he duties of the clerk are purely ministerial[.]" *Fleming v. Sinclair,* 22 Ky.L.Rptr. 499, 58 S.W. 370, 371 (1900). "The sufficiency of the information is a matter for determination of the court, not the clerk." *Id.* The same is true today. In *Nanny v. Smith,* 260 S.W.3d 815 (Ky.2008), the Court held that the clerk's duties to accept a complaint or petition and issue a summons are ministerial.

The deputy clerk in this case created a needlessly circuitous route in an expedited proceeding. James attempted to file in Bullitt County but was told by the deputy clerk he was required to file the petitions in Nelson County. Following this deputy clerk's interpretation of the law, he then filed in Nelson County. The Nelson District Court eventually set aside its emer-

gency order and ordered the case removed to Bullitt County. Thus, after a judicial pronouncement confirmed that the deputy clerk who directed James to file in Nelson County was wrong, James finally had his case heard in Bullitt County, precisely where his journey began.

This is not the first case to come before this Court where a deputy clerk has not fulfilled his or her ministerial duties and, instead, assumed the judicial role of deciding whether to file a complaint or other papers. In such cases, the result has been inevitably chaotic leading to needless legal wrangling both at the trial and appellate level. My point is simply that the role of clerk is ministerial and he or she has no discretion when given a complaint or petition for filing accompanied by any appropriate filing fee. Whether a complaint or petition is legally sufficient or filed in the proper forum is, and must remain, a question to be resolved by judicial decision.